IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY D. DOUGLAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-01333-STA-egb |
| | ) | |
| BRUCE WESTBROOKS, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Gregory D. Douglas, a Tennessee state prisoner, has filed a petition under 28 U.S.C. § 2254 seeking habeas corpus relief. (Pet., ECF No. 2.) For the reasons that follow, the Petition is **DENIED**.

**BACKGROUND**

The following background summary is drawn from the state court record (Index St. Rec., ECF No. 14) and the state appellate court's recitation of the evidence at Douglas's trial. *See State v. Douglas*, No. W2010-00472-CCA-R3-CD, 2011 WL 2899191, at *1 (Tenn. Crim. App. July 20, 2011).

**I**. **Petitioner's Trial**

In late 2008, Douglas was indicted by a Madison County grand jury on one count of second degree murder. (Indict., ECF No. 14-1 at 5-6.) At trial, Nadia Rogers testified that the defendant spent the night at her house on May 4, 2008, "and was still at the house before 7:30 a.m." the next morning. *Douglas*, 2011 WL 2899191, at * 1. When Douglas left the house

around that time, Rogers heard shots outside and observed the defendant drive away in a brown Chevrolet with Michigan tags. *Id.* She "walked down the driveway and saw the victim, James Staten, "lying halfway on the driveway and halfway on the street." *Id.* After approaching the victim, she asked him who shot him and "he responded that it was the defendant." *Id.* She went back into the house and dialed 911. *Id.*

Rogers also testified that she had dated the victim in 2006 and that he "normally came to her house at 8:00 a.m. each [week]day . . . to pick up her son to take him to school." *Id.* On cross-examination, Rogers acknowledged that she had told police on May 7, 2008, and later had testified at the preliminary hearing, that the defendant arrived at her house on the morning of the shooting to retrieve a phone charger. *Id.* at *2. She explained that she "may not have testified" at the hearing "about his spending the night because she had been very upset at the time . . . ." *Id.*

Jackson police officers Charles Trull and Mark Wray each testified that they arrived separately at the crime scene at 209 Hardee Street, Jackson, shortly after Rogers's 911 call. Neither officer encountered a Chevrolet Caprice while en route. (Tr. Trans., ECF No. 14-5 at 42, 62-63.) *See also Douglas*, 2011 WL 2899191, at * 1. At the crime scene, Wray observed the victim, still alive, lying face down with multiple gunshot wounds. The officer asked the victim who shot him "but the victim's only response was that he was having trouble breathing." *Id.*

Two of Rogers's neighbors testified that they left their respective homes and walked to the crime scene after hearing multiple gunshots. *Id.* at *2. One stated that as he approached Rogers's driveway, he saw a gray-colored Chevrolet back-up and drive away. The other neighbor reported seeing the same, except he described the vehicle as brown. *Id.*

2

Lead police investigator Tyreece Miller testified that the day after the shooting the police found a "brown Chevrolet car with Michigan license plates . . . parked behind an abandoned house . . . ." *Id.* at *3. "He said that the did not see any tire tracks in the tall grass around the vehicle" and "estimated that [it] had been parked for 'awhile' because the weeds around the car had 'a chance to stand back up.'" *Id.* He further testified that a gun was found in a tree near the car. *Id.*

A forensic scientist testified that the gun found in the tree "was not the same weapon that fired the cartridge cases" found at the crime scene. *Id.* at *2. A forensic latent fingerprint examiner testified that some of the fingerprints found on the Chevrolet Caprice belonged to the defendant and, although "there was no way to determine the age of a print," the "life expectancy" of the fingerprints found on the car "would be pretty short." *Id.* at *3 (internal quotation marks omitted).

Defense witnesses testified that Douglas spent the day and evening before the shooting at his best friend's house and drove his friend to school in a Nissan Maxima around 10:00 a.m. the day of the shooting. *Id.* at *4. Witnesses also stated that the Chevrolet Caprice was inoperable and was placed behind the abandoned house days or weeks prior to the shooting, and that the defendant's mother, not the defendant, had the keys to the car. *Id.*

Douglas was convicted of second degree murder and sentenced to twenty-five years in the Tennessee Department of Correction. *Id.* Petitioner appealed, challenging his sentence under Tennessee law and arguing that the evidence was insufficient to convict him. (Dir. App. Br., ECF No. 14-11 at 4.) *See also Douglas*, 2011 WL 2899191, at *1. The TCCA affirmed the convictions and sentence. *Id.* at *8. Douglas did not apply for permission to appeal to the Tennessee Supreme Court.

## II. Post-conviction Proceedings

On October 13, 2011, Douglas filed a *pro se* petition asserting numerous claims for state post-conviction relief, including the ineffective assistance of trial counsel, errors at sentencing, the insufficiency of the evidence to convict, errors by the trial court, and misconduct by the prosecution in failing to correct alleged perjured testimony and to turn-over exculpatory evidence. (P-C Pet., EFC No. 14-14 at 4-15.) Counsel, who was later appointed to represent Petitioner, did not amend the *pro se* petition. Following an evidentiary hearing, at which additional claims were raised, the post-conviction court denied relief. (P-C Order and Findings, ECF No. 14-14 at 34-35, 57-58.)

Petitioner appealed the denial of three ineffective assistance claims: (1) counsel "did not meet with [him] an adequate number of times," (2) "failed to provide [him] with a copy of his discovery materials," and (3) "failed to object to [Nadia Rogers's] hearsay statement identifying [him] as the shooter." *Douglas v. State*, No. W2012-02528-CCA-R3-PC, ECF No. 14-18 at 5 (Tenn. Crim. App. Nov. 1, 2013) (unpublished).[1] (*See also* P-C App. Br., ECF No. 14-16 at 18.) He did not apply for permission to appeal to the Tennessee Supreme Court.

## III. Federal Habeas Petition

On December 8, 2014, Douglas filed his Petition, in which he asserts the following claims:

Claim 1: Trial counsel provided ineffective assistance by:

> Claim 1A: Failing to provide a copy of the State's discovery to Petitioner (Pet., ECF No. 2 at 8);
>
> Claim 1B: Failing to object to Nadia Rogers's hearsay testimony that the victim identified Petitioner as the shooter

---

[1] Hereinafter, citations to the TCCA's unpublished post-conviction decision will contain only the ECF and page numbers from the state court record filed in the present case.

(*id.*);

Claim 1C: Failing to file a motion to suppress the gun (*id.*).

Claim 2: The trial court erred in admitting the gun into evidence. (*Id.* at 10-11.)

Claim 3: The evidence was insufficient to support the conviction for second degree murder. (*Id.* at 14.)

Claim 4: The prosecutor committed prosecutorial misconduct. (*Id.* at 17.)

**DISCUSSION**

On May 3, 2016, Respondent filed a Response to the Petition arguing that each claim is either without merit or procedurally defaulted. (Resp., ECF No. 15.) Petitioner filed a Reply on May 26, 2016 (Reply, ECF No. 17), and later a Supplemental Reply in which he provides additional legal authority (Supp. Reply, ECF No. 18). Upon review of the parties' arguments and the state court record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief.

**I. Legal Standards**

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 [(2000)] . . . ; or . . . "involved an

unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's factual determination is not "unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (internal quotation marks omitted) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion provision is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In light of this purpose, the Supreme Court has interpreted the exhaustion provision as requiring not mere "technical" exhaustion, *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), but "proper[]" exhaustion. *Boerckel*, 526 U.S. at 848 (italics omitted). A claim is technically exhausted when state remedies are no longer available to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)). Technical exhaustion therefore encompasses not only situations where the petitioner fully presented his claim to the state courts, but also instances where the prisoner did not present his claim to the state courts at all or failed to present it to the highest available court, and the time for doing so has expired. *Boerckel*, 526 U.S. at 845; *Wood v. Ngo*, 548 U.S. 81, 92-93 (2006). If federal habeas courts were generally allowed to review such claims, the exhaustion provision's purpose of giving the state courts the first opportunity to resolve federal constitutional issues would be "utterly defeated." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "To avoid this result, and thus protect the integrity of the federal exhaustion rule," a claim must be "properly" exhausted, meaning it must be "fairly presented" through "one complete round of the State's established appellate review process." *Boerckel,* 526 U.S. at 845, 848 (internal quotation marks and italics omitted).

The exhaustion requirement works in tandem with the procedural default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. Broadly speaking, procedural default happens in two ways. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court

7

"actually . . . relie[d] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that the court's "failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Coleman*, 501 U.S. at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Trevino v. Thaler*, 569 U.S. 413, 423 (2013); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

## II. Claim 1: Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel rendered ineffective assistance in three respects: by failing to provide him with a copy of the State's discovery (Claim 1A), failing to object to Nadia Rogers's hearsay testimony that the victim identified him as the shooter (Claim 1B), and failing to move to suppress the gun (Claim 1C). (Pet., ECF No. 2 at 8.) Petitioner raised and litigated all three sub-claims in the initial post-conviction proceeding. (*See* P-C Hrg. Trans., ECF No. 14-15 at 9-11, 16-17, 28-31, 35-37, 54-55, 65-68.). *See also Douglas*, ECF No. 14-18 at 5. The post-conviction court denied relief, finding, among other things, that counsel "obtained full discovery from the State" and "went over everything in the discovery materials with his client." (P-C Order and Findings, ECF No. 14-14 at 34-35, 57-

58.) The court also concluded that trial counsel's failure to file a motion to suppress the gun was not deficient because he "failed to present any proof that such a [m]otion . . . had any basis upon which it could have been granted." (*Id.* at 35.) *See also Douglas*, ECF No. 14-18 at 4-5.

On appeal to the TCCA from denial of post-conviction relief, Petitioner raised Claims 1A and 1B, but was unsuccessful. *See Douglas*, ECF No. 14-18 at 9. He did not appeal Claim 1C. (*See* P-C App. Br., ECF No. 14-16 at 18.) *See also Douglas*, ECF No. 14-18 at 5. Claim 1C is therefore procedurally defaulted.

Petitioner has not asserted cause to excuse the default and cannot, in any event, rely on post-conviction appellate counsel's failure to raise the issue on appeal. *See Young v. Westbrooks*, 702 F. App'x 255, 259 (6th Cir. 2017) (holding the ineffective assistance of post-conviction appellate counsel does not constitute cause to excuse a procedural default). Claim 1C is thus not reviewable in this federal habeas proceeding, *see Boerckel*, 526 U.S. at 848, and is therefore **DISMISSED**.

Claims 1A and 1B, in contrast, are properly before the Court as having been fully exhausted in the state courts. The TCCA's denial of those claims is therefore reviewable under the AEDPA's deferential standards. *See id.*

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on this claim, a movant must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' . . . " *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693).

*Strickland*'s two-part test applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). A petitioner meets the deficient performance prong by demonstrating that his appellate counsel "made an objectively unreasonable decision by choosing to raise the other issues" instead of the challenged issued, meaning the challenged issue was "'clearly stronger than issues that counsel did present.'" *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Robbins*, 528 U.S. at 285, 288). The prejudice prong requires a petitioner to "demonstrate 'a reasonable probability that, but for his counsel's unreasonable

failure to' raise th[e] issue on appeal, 'he would have prevailed.'" *Id.* (quoting *Robbins,* 528 U.S. at 285).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when reviewing an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

In addressing Douglas's ineffective assistance claims, the TCCA expressly invoked *Strickland*'s two-part test. *Douglas*, ECF No. 14-18 at 6. Applying that test, it affirmed the lower court's determination that counsel's performance with regard to discovery had not been deficient. *Id.* at 8. It noted that Petitioner's assertion that "he did not know which witnesses would testify at trial and was not able to adequately prepare for trial," was contradicted by trial counsel's testimony. *Id.* Counsel testified that "he had obtained all the discovery available[,] . . . met with the petitioner and went over all of the discovery with him, [but] did not give him a copy to keep" "for fear that a jailhouse informant would . . . invent[] a . . . false confession [corroborated] with details gleaned from the discovery documents." *Id.* at 5, 8. Accepting the lower court's decision to credit counsel's testimony over Douglas's testimony, the appellate court "conclude[d] that the record d[id] not preponderate against the post-conviction court's

11

finding . . . that trial counsel obtained and discussed all available discovery with the petitioner."

*Id.*

The TCCA also determined that Petitioner had not shown that he was prejudiced by counsel's decision not to give him a copy of the State's discovery:

> The petitioner has . . . neglected to introduce evidence regarding what he would have done to prepare for trial or what additional witnesses he would have called if counsel had given him a copy of the discovery—in short, there is no evidence regarding how the outcome of the trial would have been different if he had had a copy of this discovery in jail.

*Id.*

The appellate court likewise rejected Petitioner's claim that trial counsel was ineffective for failing to object to Nadia Rogers's testimony as impermissible hearsay. *Id.* Key to the TCCA's determination was counsel's testimony "that he did not object to [Rogers's] testimony because he felt that it was an exception to the rule against hearsay," namely, that it was testimony of the victim's dying declaration. *Id.* at 8 & n.4 (citing Tenn. R. Evid. 804(b)(2)). Counsel testified that, instead of objecting, he "used [Rogers's] testimony as an opportunity to explore [her] credibility, because other witnesses had testified that the victim was unable to speak at all." *Id.* at 8. The TCCA "indulge[d] a strong presumption that the conduct of counsel f[ell] within the range of reasonable professional assistance," and refused to "second-guess [counsel's] tactical and strategic choice[]." *Id.*

Petitioner has not shown that he is entitled to relief under the AEDPA on either Claim 1A or Claim 1B. First, the TCCA's ineffective-assistance determinations are not "contrary to" *Strickland,* 28 U.S.C. § 2254(d)(1), because the court expressly invoked *Strickland* and applied its two-part test to the facts. *See Williams*, 529 U.S. at 406 (A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

Second, the TCCA's rulings were not based on an unreasonable determination of the facts. *See* 28 U.S.C. §§ 2254(d)(2). As noted, the appellate court affirmed the post-conviction findings, deferring to the lower court's decision to credit counsel's testimony. In this federal habeas proceeding, the state court factual findings are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Douglas has not identified. *See Gardner v. Burt*, No. 16-2501, 2017 WL 5012015, at *2 (6th Cir. May 11, 2017) (holding federal habeas courts have "'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Third, the TCCA's determinations were not based on an unreasonable application of *Strickland*'s standards. S*ee* 28 U.S.C. § 2254(d)(1). Given the fact that trial counsel obtained all discovery and shared it with Petitioner, and had reason for not leaving a copy at the jail, the TCCA did not unreasonably conclude that counsel's actions constituted "sound trial strategy." *Strickland*, 466 U.S. 689 (internal quotation marks omitted). Moreover, the complete absence of evidence to show that the outcome would have been different had counsel left a copy of the discovery materials with Petitioner supports the TCCA's determination that Douglas had not been prejudiced. *See e.g., Harris v. Carlton*, No. 2:05-cv-24, 2007 WL 776517, at *12 (E.D. Tenn. Mar. 9, 2007) (holding state court's rejection of ineffective assistance claim was "not based on an . . . unreasonable application of *Strickland*" where petitioner had not submitted any evidence that he was prejudiced). Finally, in light of the Tennessee evidentiary rule allowing hearsay testimony of dying declarations, the TCCA reasonably concluded that counsel's tactical decision to challenge Rogers's credibility rather than object on hearsay grounds was not deficient performance. *See e.g., Parker v. Burt*, No. 1:11-cv-1297, 2015 WL 139859, at *21 (W.D. Mich.

Jan. 12, 2015) (finding state appellate court's rejection of ineffective assistance claim was not objectively unreasonable where "[a]lthough defense counsel certainly could have objected to [the witness' hearsay] statement, he instead elected to challenge [the witness'] credibility by emphasizing the many inconsistencies in [his] testimony . . . .")

Because the TCCA's ineffective assistance determinations are not contrary to clearly established Supreme Court law, based on an unreasonable determination of the facts, or the result of an unreasonable application of clearly established law to the facts, Claims 1A and 1B are **DENIED** as meritless.

### III. Claim 2: Trial Court Error in Admitting Gun into Evidence

Douglas asserts that the trial court erred in admitting into evidence the gun found in the tree near his car. (Pet., ECF No. 2 at 11.) He argues that the gun was irrelevant evidence, as established by the forensic expert witness who testified that the gun was not the firearm used to shoot the victim. (*Id.*) The trial court, he insists, should have excluded the gun pursuant to rules of evidence governing relevancy and prejudice. (Reply, ECF No. 17 at 3.)

The claim is procedurally defaulted. The defense did not object to introduction of the gun at trial (P-C Hrg. Trans., ECF No. 14-15 at 61) and did not raise the issue on direct appeal (Dir. App. Br., ECF No. 14-11 at 4). *See also Douglas*, 2011 WL 2899191, at *1. Petitioner acknowledges the default, but insists that his attorney's ineffectiveness in failing to object to admission of the gun into evidence and failing to raise the issue on appeal are cause to excuse the default. (Reply, ECF No. 17 at 3.) The argument fails.

The ineffective assistance of trial or appellate counsel can constitute cause for a procedural default. *Edwards*, 529 U.S. at 453. However, an "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be

14

procedurally defaulted ...." *Id.* As noted in the discussion of Claim 1C, above, although Douglas asserted at the post-conviction hearing that his counsel was ineffective at trial and on appeal by failing to raise the issue of the gun's admissibility, he did not raise those ineffective assistance claims in his appeal from denial of post-conviction relief. Petitioner thus has not established cause to excuse the default of Claim 2.

Claim 2 is therefore **DISMISSED**.

## IV. Claim 3: Insufficiency of the Evidence

Douglas insists that the evidence was insufficient to convict him of second degree murder. (Pet., ECF No. 2 at 14.) In particular, he argues that "there was no eyewitness[] to the shooting or . . . physical evidence linking [him] to the crime," and that "Nadia Rogers . . . wasn't a credible witness" and her testimony was "hearsay." (*Id.*) He raised the claim on direct appeal from his judgment of conviction, but the TCCA rejected it. *See Douglas*, 2011 WL 2899191, at *5-6. Because the claim was properly exhausted in the state courts, it is reviewable by this Court under the AEDA's deferential standards. *See Boerckel*, 526 U.S. at 848. For the following reasons, the Court concludes that Petitioner's challenge to the TCCA's determination is without merit.

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases and therefore governs Petitioner's claim. *See Coleman v. Johnson*, 566 U.S.650, 651 (2012) (per curiam) (*Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

The *Jackson* standard is deferential to—that is, "gives full play to"—the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* In federal habeas proceedings, "*Jackson* claims . . . are subject to two layers of judicial deference": deference to the "responsibility of the jury . . . to decide what conclusions should be drawn from evidence admitted at trial," and deference under the AEDPA's standards to the state reviewing court's evidence-sufficiency determination. *Coleman*, 566 U.S. at 651.

In his direct appeal, Douglas contended that "the evidence was insufficient to support his conviction [for second degree murder] because of the conflicting testimony presented at trial." *Douglas*, 2011 WL 2899191, at *5. In particular, he challenged Nadia Rogers's testimony, complained that there was no eyewitness to the crime, and pointed out that there was evidence admitted at trial suggesting that the Chevrolet Caprice had not been driven since before the shooting. (Dir. App. Br., ECF No. 14-11 at 13-14.) *Id.* Addressing the claim, the TCCA invoked *Jackson*'s standards, *see Douglas*, 2011 WL 2899191, at *5, and concluded that "the evidence was sufficient for any rational trier of fact to find that the defendant knowingly killed the victim," as required for second degree murder.[2] *Id.* at *6.

Specifically, the appellate court determined that "[v]iewed in the light most favorable to the state, the evidence at trial showed that the defendant walked out of Ms. Rogers' house, shot the victim five times, and drove away in a brown Chevrolet Caprice with Michigan tags" *Id.*

---

[2] "Second degree murder is '[a] knowing killing of another.'" *Douglas*, 2011 WL 2899191, at *6 (alteration in original) (citing Tenn. Code Ann. § 39–13–210(a)(1)).

16

The court found that this version of events was supported by the testimony of several witnesses, notwithstanding the conflicting testimony of others:

> While there was conflicting testimony presented about where the defendant had spent the previous night, the only evidence presented about the defendant's whereabouts at the exact time the victim was shot was that he was at 209 Hardee Street. To the extent that Meincwone and Tyrone Lee's testimonies could be construed as an alibi for the defendant for 7:30 a.m. to 8:00 a.m., during which time the victim was shot, the jury resolved the conflict between their testimonies and Ms. Rogers' testimony in favor of the state. *Bland,* 958 S.W.2d at 659. Ms. Rogers' testified that the victim told her that the defendant had shot him. Her credibility was a matter for the jury's determination and not this court's. *Id.* Several witnesses saw the brown Chevrolet Caprice with Michigan tags leaving the crime scene immediately following the gunshots. The defendant's argument that the testimony and photographic evidence proved that the defendant had not moved the vehicle since leaving at the house on North Liberty Street is without merit because that was an issue of fact for the jury.

*Id.*

Douglas is not entitled to relief under the AEDPA on his evidence-sufficiency claim. First, the TCCA's determination was not "contrary to" *Jackson*, 28 U.S.C. § 2254(d)(1), because the TCCA expressly invoked and applied *Jackson*'s standards. *See Williams*, 529 U.S. at 406.

Second, the TCCA's evidence-sufficiency determination was not based on an unreasonable determination of the facts or an unreasonable application of *Jackson*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). Although there was no eyewitness to the shooting, there was evidence, as recounted by the TCCA, to support the conclusion that the defendant was the perpetrator. To the extent the evidence was circumstantial and was countered in some measure by the testimony of defense witnesses, *Jackson* reserves for the jury the "responsibility . . . fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 433 U.S. at 319.

Petitioner has not identified "clear and convincing evidence" to undermine the jury's factual determinations. 28 U.S.C. § 2254(e)(1).

Accordingly, because the TCCA's evidence-sufficiency determination was not contrary to clearly established Supreme Court law, based on an unreasonable determination of the facts, or the result of an unreasonable application of the law to those facts, Claim 3 is **DENIED**.

V.     **Claim 4: Prosecutorial Misconduct**

In Claim 4, Petitioner asserts that the prosecutor engaged in misconduct at trial by "constantly saying [']we have a murderer in this courtroom[,]' trying to paint a bad picture of [him] when the court[']s going off hearsay not facts." (Pet., ECF No. 2 at 17.) He does not specify when, exactly, the prosecutor called him a murderer. The post-conviction transcript suggests, however, that Petitioner is challenging the prosecutor's closing argument. (*See* P-C Hrg. Trans., ECF No. 14-15 at 43-44; 67). *See also Douglas*, ECF No. 14-18 at 4 n.3 ("At the hearing, the petitioner also objected that the Assistant District Attorney General had called him a murderer during closing argument.") The claim is procedurally defaulted.

The standard governing a claim of prosecutorial misconduct is whether the conduct was "so egregious so as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979) (citing *Donnelly v. DeCristoforo*, 416 U.S. 637, 643 (1974)). In making that determination, "[t]he court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)); *see also Moore v. Mitchell*, 708 F.3d 760, 799 (6th Cir. 2013).

The Court does not reach the merits of Petitioner's prosecutorial misconduct claim because he procedurally defaulted it. No objection was made at trial to the prosecutor's alleged

"murderer" comment (P-C Hrg. Trans., ECF No. 14-15 at 67), and the issue was not raised on direct appeal (Dir. App. Br., ECF No. 14-11 at 4.) Petitioner argues that the default is excused "due to the ineffective assistance of prior counsel." (Reply, ECF No. 17 at 4.)

As noted, the ineffective assistance of trial or appellate counsel can constitute cause for a procedural default, but such an ineffective-assistance-of-counsel claim must itself not be procedurally defaulted. *Edwards*, 529 U.S. at 453. During the post-conviction hearing, the issue of counsel's failure to object to the prosecutor's alleged comment was raised and litigated. (P-C Hrg. Trans., ECF No. 14-15 at 43-44, 46, 67). Douglas did not, however, raise the issue on appeal from denial of post-conviction relief. (P-C App. Br., ECF No. 14-16 at 18.) *See also Douglas*, ECF No. 14-18 at 4 n.3 (stating that Petitioner litigated the issue below but did not raise it on appeal). Petitioner does not allege cause to excuse *that* default. Accordingly, he cannot rely on counsel's alleged ineffectiveness as cause to excuse his default of the prosecutorial misconduct claim.

Claim 4 is therefore **DISMISSED**.

The Court having found that Douglas is not entitled to habeas corpus relief on any of his claims, the Petition is hereby **DENIED**. Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: February 6, 2018.